UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD A. BUSH,            )
    Plaintiff,            )
                            )    No. 1:14-cv-595
-v-                         )
                            )    HONORABLE PAUL L. MALONEY
COMMISSIONER OF SOCIAL SECURITY,    )
    Defendant.            )
_____)

**OPINION**

       This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Richard Bush seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

**STANDARD OF REVIEW**

       The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported

by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was born on May 3, 1964. He was 46 on the date of his alleged onset date of disability. (A.R. 345). Plaintiff completed the ninth grade, obtained a GED, and was previously employed as a laborer and machine operator. (A.R. 68, 377). On November 8, 2011, plaintiff filed for DIB and SSI (A.R. 345, 349) alleging disability beginning on March 1, 2011 (A.R. 345, 349) due to "heart attack, ocd, raynards disease, lupus, [and a] torn rotator [cuff.]" (A.R. 263). Plaintiff's application was denied by the Commissioner on January 13, 2012 (A.R. 281-88). Plaintiff thereafter requested a hearing before an

Administrative Law Judge (ALJ) and, on January 15, 2013, plaintiff appeared with counsel for an administrative hearing before ALJ John Giannikas. At that hearing plaintiff, Edward Pagella (a vocational expert), Dr. Oscar Farmati and Mr. Richard Gross testified. (A.R. 56) ALJ Giannikas' decision, dated February 6, 2013, determined that plaintiff was not entitled to DIB or SSI. (A.R. 35-54). Plaintiff sought review before the Appeals Council, but the Council declined to review the case on March 28, 2014 making it the Commissioner's final decision (A.R. 1-7). Plaintiff thereafter initiated this action.

## ALJ'S DECISION

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). To aid ALJs in applying the above standard, the Commissioner of Social Security has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five step sequential process" for claims of disability. First [a] plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, [a] plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if [a] plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, [a] plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, [a] plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that [the] plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since March 1, 2011. (A.R. 40). Second, the ALJ determined that plaintiff had the severe impairments of (1) cardiovascular disorder, (2) history of bilateral shoulder surgery, (3) gastrointestinal disorder, (4) history of substance abuse, and (5) adjustment disorder with depressive and anxious features. (A.R. 40). At the third step, the ALJ considered whether the plaintiff met a listed impairment and found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (A.R. 41-43).

With respect to plaintiff's residual functional capacity, the ALJ determined that plaintiff

> has the residual functional capacity to occasionally lift and carry, push, and pull fifteen pounds, frequently lift and carry, push, and pull, ten pounds or less, and that he is able to sit for two to three hours straight for a total of six hours out of an eight-hour day, and stand and walk for a total of two hours out of an eight hour day, but that he must ambulate at a slower pace on largely level ground. In addition, he is not capable of bilateral overhead reaching, and is capable of no more than occasional engagement in all postural functions, but never any crawling or climbing of ladders, ropes, or scaffolds, and no exposure to unprotected heights or operation of motor vehicles. Furthermore, the claimant must avoid extremes of temperature. The claimant must have bathroom facilities close at hand and is likely to be off task approximately 5-10% of the day (due to incontinence issues). The claimant is limited to no more than occasional interaction with co-workers and supervisors and no interaction with the public. Finally, the claimant is able to understand, remember, and carry out simple tasks (one and two step instructions).

4

(A.R. 43). Continuing with step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (A.R. 49).

At the fifth step, the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on the issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJ's routinely question a vocational expert (VE) in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case in the instant matter. The VE testified that there existed approximately 8,900 jobs in the state of Michigan and 438,000 national jobs which a person with plaintiff's residual functional capacity could perform, such limitations notwithstanding. (A.R. 108-12). The VE testified that this work included jobs in hand sorting operations, as an assembler, and as a bench packager. (A.R. 110). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988). Thus, following the five steps, the ALJ determined plaintiff was not disabled within the meaning of the Act.

## ANALYSIS

Plaintiff raises three issues on appeal.

**1.  The ALJ erred by failing to consider the objective medical evidence and plaintiff's subjective complaints in his RFC finding.**

**a.  The ALJ Properly Examined the Record**

Plaintiff first claims that the ALJ erred in his determination of the record by ignoring facts that would lead to a determination that plaintiff was disabled. The argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir.2009). To the extent that plaintiff asks this Court to re-weigh the evidence with respect to portions of his medical history and then determine whether it agrees (or disagrees) with the ALJ's determination as to that particular event, he seeks a *de novo* review of the record which is beyond the scope of this Court's. *See Brainard*, 889 F.2d at 681. The record reflects that the ALJ considered plaintiff's extensive medical history. (A.R. 43-49). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision. *Willbanks*, 847 F.2d at 303. Accordingly, plaintiff's claim of error is denied.

**b.  The ALJ's RFC Determination Accounted for Plaintiff's Medication Side Effects.**

Next, plaintiff contends that the ALJ failed to discuss the side effects from his medications. The record demonstrates that by the plaintiff's date last insured, his medications included amlodipine, aspirin, atorvastatin, carvedilol, docusate sodium, eszopiclone, hydrochlorothiazide, lisinopril, naproxen, omeprazole, polyethylene glycol, promethazine, quetiapine, ranitidine, ropinirole, sertraline, solifenacin,

tramadol, and nitroglycerin. (A.R. 378). At the administrative hearing, plaintiff stated he experienced side effects from these medications that included constipation, nausea, vomiting, and dizziness. (A.R. 73). Plaintiff also stated he took medication to help with the side effects. (A.R. 73).

Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Commissioner of Social Security*, 114 Fed. Appx. 662, 665-66 (6th Cir. 2004) (where plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians); *Farhat v. Sec'y of Health and Human Services*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992) ("[claimant's] allegations of the medication's side-effects must be supported by objective medical evidence"). Based on this record, plaintiff's complaints of side effects are supported by objective medical evidence. (A.R. 703, 723, 811).

Contrary to plaintiff's contentions, the ALJ properly evaluated these side effects. The ALJ expressly noted "the claimant has alleged symptoms consistent with the aforementioned impairments, including . . . medication side effects (nausea, constipation, vomiting, dizziness). . . ." and a psychiatrist's opinion that plaintiff may be over medicated. (A.R. 43, 47). Nevertheless, the ALJ found that "a careful review of the record reveals that the claimant's impairments do not prevent him from working at jobs consistent with the residual functional capacity . . . ." (A.R. 44). For example, the ALJ noted the plaintiff's issues of constipation, and concluded that "[c]onsequently, the undersigned has afforded the claimant an assessed limitation that he must be in close proximity to bathroom facilities and a period of time off task (5-10%) throughout the workday." (A.R. 45). The RFC additionally accounted for plaintiff's fatigue, dizziness and nausea by stating plaintiff cannot crawl, climb ladders, ropes or scaffolds, and cannot be exposed to

unprotected heights nor operate motor vehicles (A.R. 43). Accordingly, plaintiff's claim of error will be denied.

### 2. The ALJ erred by giving an incomplete hypothetical and relying upon improper VE testimony.

Plaintiff contends that the ALJ erred at step five by giving an inadequate hypothetical question to the VE which rendered the VE's testimony useless. First, plaintiff points out that the ALJ's RFC hypothetical was based, in part, on the opinion of a state agency psychiatric consultant, Dr. Ruquya Tareen. Dr. Tareen's opinion, as stated by the ALJ, was that the plaintiff "has moderate difficulties with concentration, persistence, and pace . . ." (A.R. 49). The ALJ adopted those limitations in his RFC determination. (A.R. 49). Plaintiff claims the ALJ erred, however, because the RFC did not address the speed and pace at which plaintiff is able to work. (A.R. 11). The Court disagrees. The ALJ's RFC determination in the instant matter adequately accounted for speed and pace limitations by restricting plaintiff to jobs which allow him to "ambulate at a slower pace on largely level ground," restricting plaintiff "to no more than occasional interaction with co-workers and supervisors and no interaction with the public," and restricting plaintiff to work which require the ability "to understand, remember, and carry out simple tasks (one and two step instructions)" (AR 43). *See Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (determining that a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner"). Accordingly the plaintiff's claim of error will be denied.

Plaintiff also contends that the VE misunderstood a hypothetical given by the ALJ, i.e., that the ALJ posed a hypothetical in which a person in plaintiff's position would need to have restroom facilities close at hand, but that the VE's response involved the time plaintiff would be off task rather than the proximity of bathroom facilities. The relevant portion of the transcript proceeds as follows:

> Q. Okay. Now hypothetical number two. This person would have to have bathroom facilities close at hand in view of his incontinence issues. How would that affect the numbers that you gave me?
>
> A. I would need to know the percentage amount of time that he would be off task.
>
> Q. Well, he told me he has to void three or four hour –
>
> A. That would indicate no substantial gainful activity.
>
> Q. Okay. Well, I don't think it's going to be more than – I don't think he'd be off task more than 10 percent out of a day, if that.
>
> A. [inaudible] likely affect the occupations.
>
> Q. Let's say 5 to 10 percent.
>
> A. That would be no change in my response to hypothetical number one. [finding a significant number of jobs plaintiff could perform].

(A.R. 110).

Although plaintiff is now challenging the VE's response to a hypothetical question, his counsel did not object to this testimony during the administrative hearing. "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Commissioner of Social Security Administration*, No. 1:11-cv-1290, 2012 WL 4434078 at 3 (N.D. Ohio Sept. 24, 2012), citing *Hammond v. Chater*, No.

96-3755, 1997 WL 338719 at *3 (6th Cir. June 18, 1997) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal).

Plaintiff further argues that the hypothetical question was deficient with respect to plaintiff's incontinence because it failed to specify that plaintiff would need to take unscheduled breaks and that plaintiff would need, on occasion, to change clothing and clean himself. Plaintiff did not clarify this issue during the administrative hearing. (A.R. 111). The Court disagrees. The hypothetical question posed to the VE adequately addressed plaintiff's concerns by plainly stating that plaintiff would need restroom facilities close by, and be off task up to ten percent of the day. (A.R. 110-11). In the context of this hypothetical question, use of the term "off task" necessarily included the understanding that plaintiff's breaks would be unscheduled.

Next, plaintiff contends that the VE provided information which was inconsistent with the Dictionary of Occupational Titles ("DOT") and that the ALJ failed to develop the record to resolve the inconsistencies. Plaintiff cites SSR 00–4p ("Use of vocational expert and vocational specialist evidence, and other reliable occupational information in disability decisions") for the proposition that "the ALJ should have . . . verified that the VE understood the parameters of the limitation and asked whether there were any conflicts with the Dictionary of Occupational Titles (DOT)." Plaintiff's Brief (docket no. 10, PageID #953).

The Sixth Circuit has rejected the argument that the Commissioner is bound by the DOT's characterization of occupations, holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003),

10

citing *Conn v. Sec'y of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995). Under SSR 00–4p, the ALJ has a duty to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence."[1] The Sixth Circuit has construed this SSR to mean "that the Social Security Administration imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Commissioner of Social Security*, 560 F.3d 601, 606 (6th Cir. 2009). The record reflects that the ALJ did not ask the VE if the evidence conflicted with the information provided in the DOT. However, in this instance, the Court concludes that the ALJ was absolved of this affirmative duty because by including a DOT code for each job identified in her response to the hypothetical questions (A.R. 109–10), the VE demonstrated that her opinions were consistent with the DOT. While the ALJ has a duty to develop the record, the court does not view SSR 00–4p as requiring the ALJ to affirmatively interrogate the VE in order to establish that no potential conflicts exist between the VE's testimony and the DOT when the VE's own testimony includes citations to the DOT. Accordingly, plaintiff's claim will be denied.

Finally, plaintiff contends that the VE was incorrect in determining the number of available jobs, and claims, without pointing to anything in the record, that the number of jobs is actually much less than the vocational expert claimed. Plaintiff's Brief at PageID #953. The Court's review "is limited to an examination of the record only." *Brainard*, 889 F.2d at 681. Plaintiff's presentation of evidence outside

---

[1] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 F.App'x. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir. 2004) (citations omitted).

of the record is not a proper subject for review. Accordingly, plaintiff's claim of error will be denied.

### 3. The ALJ erred by making an improper credibility determination.

Plaintiff contends that the ALJ improperly discounted his credibility. Plaintiff reasons that the two inconsistencies on which the ALJ relied, use of alcohol and the reason plaintiff stopped working, were not inconsistencies and did not have any bearing on credibility.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536 (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 F.App'x. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 F.App'x. 988, 995 (6th Cir. 2007). In addition, the Sixth Circuit has applied the harmless error analysis to a ALJ's credibility determinations in social security disability hearings. *Ulman v. Commissioner of Social Security*, 693 F.3d 709, 714 (6th Cir. 2012) ("Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and

supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Applying the necessary deferential standard, the Court is persuaded that the ALJ made impermissible credibility determinations. The substantive portion of the credibility findings focused on whether the limiting effect of the plaintiff's impairments, as he testified, were supported by medical evidence. The ALJ provided the following explanation:

> After careful consideration of the evidence, the undersigned finds that the claimant's medical determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent that they are inconsistent with the above residual functional capacity assessment. When evaluating credibility as it relates to the claimant's assertions, the undersigned has taken into consideration various factors, including the objective medical evidence, medical treatment, medications taken, comments regarding the claimant's activities of daily living, work history, and opinions.

(AR 44). The ALJ then summarized the medical evidence and medical treatment, concluding that the record did not support the "intensity, persistence, and limiting effect of the symptomology alleged by the claimant." (*Id.*). Only then did the ALJ discuss other inconsistencies, the use of alcohol and the reason that the plaintiff stopped working. In other words, the alleged errors were findings made by the ALJ *after* finding that the medical evidence did not support the plaintiff's testimony about the intensity, persistence, and limiting effects of his disability. At worst, the ALJ's discussion of alcohol use and work history were harmless error.

## CONCLUSION

For the reasons provided above, the Court finds no error in the Commissioner's decision denying Plaintiff's claim for disability insurance benefits or supplemental security income. Therefore, the Commissioner's decision is **AFFIRMED.  IT IS SO ORDERED.**


Date:  November 9, 2015                          /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge